[No. 3512.   Jan. 31, 1931.]

[Rehearing Denied March 24, 1931.]

FOSTER et al.v . ZAPF et al.

[296 Pac. 800.]

Downer & Keleher, of Albuquerque, for appellants.

George C. Taylor, of Albuquerque, for appellees.

OPINION OF THE COURT

WATSON, J.

C. E. Foster, now deceased, and Artie Foster, his wife, entered into an executory contract with J. R. Bennett for exchange of their residence properties.   Pursuant thereto the former conveyed their property to the latter.   In this

suit against B̦ennett and a number of other defendants, the widow and heirs of C. E. Foster seek a reconveyance of it. Such relief was granted, based, as the learned trial judge states in his opinion, upon the rule that a real estate broker cannot purchase his principal's property without disclosing his interest in the transaction; citing Rodman v. Manning, 53 Or. 336, 99 P. 657, 1135, 20 L. R. A. (N. S.) 1158.

By the findings it appears that appellant Zapf was the owner and proprietor of a brokerage business under the name of Zapf-Van Company, and that appellants Atwater and Bennett were associated in the business as salesmen on a commission basis; that up to March 13, 1929, the record title of the property for which the Fosters traded was in Atwater, but with an outstanding unrecorded deed to Zapf; that on March 16, by deed dated March 1, the record title passed from Atwater to Bennett, but that Zapf was at all material times the actual and equitable owner of the property; that on said March 13 the Zapf-Van Company solicited and obtained a listing of the Foster property at a price of $8,000; that immediately thereafter Atwater called upon the Fosters as representing the Zapf-Van Company, and negotiated the executory contract in question, representing that Bennett was the owner of the property offered the Fosters in trade, and that it was worth $6,500; that the Fosters were unadvised as to values and inexperienced in real estate transactions and relied wholly upon Atwater's representations; that on the following day they learned by inquiry that the value of the property was much less and refused to perform the agreement to convey; that thereupon Atwater and Zapf, by threats of making the Fosters trouble and of causing C. E. Foster to lose his railroad job, induced them to make the deed; that the ownership of the property and Zapf's interest therein was at all times concealed from the Fosters.

At the outset, appellants concede the principle above stated as the basis of the relief granted. They contend, however, that it is not here applicable. They urge the rule that, if the principal obtains knowledge of the broker's interest in the transaction and elects, nevertheless, to perform, he may not thereafter rescind. In such case,

it is urged, the parties have really dealt at arm's length; there has been a waiver of the constructive fraud and of the right to rescind because of it.

Have we here a case of waiver? At appellants' request, the court found that, when the Fosters made the deed now sought to be annulled, they had kowledge that Atwater was interested in the property and that he had listed it with various real estate brokers at a price of $5,250, and that with full knowledge of Atwater's interest, and upon certain concessions made, including waiver of broker's commission and of certain furniture to have been included, they agreed to and did execute and deliver the deed. To this finding the court added:

"But at no time did plaintiffs know of the interest of Charles G. Zapf in said property."

Considering this finding, with the court's addition to it, and the other findings, it appears that the Fosters made their deed in the belief that Atwater was the legal and equitable owner of the property, and, inferentially, that the transaction was in his interest. Counsel for appellees admits that, if they had acted voluntarily, they would thus have waived the false representation that Bennett was the party adversely interested. But there was still concealed from them the fact that Zapf was the real party in interest.

So there was not a full disclosure, or discovery, or full knowledge of the broker's interest in the transaction. No doubt sufficient knowledge had been obtained to warn the Fosters not to rely on Atwater, or perhaps Zapf, to protect their interest. Perhaps they would have done as they did if they had known of Zapf's interest. But that is not the controlling consideration.

"The courts do not stop to inquire whether the broker has gained an advantage or not, or whether his conduct has been fraudulent or not. Once the fact appears they do not pause to speculate concerning the merits of the transaction, but they pronounce the transaction void as against public policy."

4 R. C. L. "Brokers," § 25. The constructive fraud appearing, no actual imposition or damage need be shown. The ban of equity falls upon such transactions, unless the principal "with full knowledge of all the facts and circum-

stances acquiesces in such a course; and even then the broker's actions throughout must be characterized by the utmost good faith, and in the event of any litigation between him and his employer, the burden is upon him to prove both the permission and the exemplary manner in which he availed himself of it." Id. See, also, 9 C. J. "Brokers," § 39, Mechem on Agency (2d Ed.) § 2411, Clark & Skyles on the law of Agency, § 764.

By quoting the foregoing we do not mean to give final approval to it as an accurate statement of the law. It is sufficiently accurate, however, for our present purposes, and we do not think we could modify it enough to meet appellant's present necessities. They disclosed nothing. They concealed everything. They misrepresented the most material fact. The vigilance of the Fosters discovered a part of the misrepresentation and perhaps warned them to be on their guard. Nevertheless, they traded in ignorance of the fact that Zapf, their broker, was himself the buyer. This fact a salutary rule of law declares fatal to the transaction if the principal sees fit to avoid it. Having no knowledge of it, they could not and did not waive it.

Appellants attack the finding that Zapf was the equitable owner of the property. They say that there is no substantial evidence of it. A careful reading of the record convinces us that the point is not well taken.

They say, also, that the fact was not pleaded. This is true. The theory of the complaint was that Atwater falsely represented that Bennett owned the property and greatly overstated its value, and that, when this was discovered by the Fosters and they repudiated the executory contract, Zapf and Atwater obtained their deed through duress. The theory of recovery is Zapf's undisclosed interest in the transaction. Is this variance fatal to the judgment?

The evidence as to Zapf's interest in the property was not objected to. Nor do we find that it was brought to the attention of the trial court that either the finding now questioned or the principle upon which the trial court acted was a departure from the theory of the complaint. Had

such objection been made it would have been a proper occasion for amendment of the pleadings to cover the proof. In the absence of such objection, we deem it proper to consider the complaint as amended in this court. 1929 Comp. c. 105, art. 6. Cannon v. First Nat. Bank, 35 N. M. 193, 291 P. 924.

It is possible, though we do not decide, that the decree might have been placed on other grounds. We are satisfied, however, with the theory adopted by the trial judge. In this view the matter of duress is not involved.

Having found no error, we affirm the judgment and remand the cause. It is so ordered.

BICKLEY, C. J., and SADLER, J., concur.

PARKER and HUDSPETH, JJ., did not participate.